UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

CASE NO. 5:25-CV-00003-LGW-BWC

SCOTT MCCARTY,
    PLAINTIFF                                           **JURY DEMANDED**

vs.

CSX TRANSPORTATION, INC.
    DEFENDANT.

## AMENDED COMPLAINT PURSUANT TO THE
## FEDERAL RAIL SAFETY ACT – 49 U.S.C. SECTION 20109

Plaintiff, Scott McCarty (hereinafter "Plaintiff" or "McCarty"), by and through his attorney of record, Alisa D. Wilkes, Esq., and for his amended complaint, filed without leave by written consent of counsel pursuant to FRCP 15(a)(2), against the defendant, CSX Transportation, Inc., (hereinafter "CSX" or "Defendant") for damages and all available relief under the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20109, hereby states the following:

### NATURE OF ACTION

1. Adverse employment actions consisting of a negative performance review, harassment, hostility, and termination from his management position were made by CSX against Scott McCarty in retaliation for his voicing complaints and reporting safety hazards relating to work conditions, the inability to establish communications

with upper-management employees related to safety issues, seeking safe accommodation for his known medical condition of PTSD, and filing a FRSA whistleblower retaliation claim with OSHA on May 31, 2024. CSX knew that Plaintiff had or was about to engage in protected activity when he was terminated from his supervisor position.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction in this case pursuant to the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §20109(d).

3. Plaintiff filed an administrative action with the Secretary of Labor on May, within 180 days of the retaliatory adverse actions in violation of the FRSA. Plaintiff amended his administrative complaint to add allegations regarding the Secretary of Labor. After this case was pending for over 210 days without a final decision from the Secretary, Plaintiff filed this action in the Southern District of Georgia pursuant to §20109(d)(3)-(4).

4. This Court is the proper venue for this case pursuant to 28 U.S. Code §1391 (b), because a substantial part of the events or omissions giving rise to the claim occurred at or near Waycross, Georgia, in the Southern District of Georgia, where Plaintiff was working when a substantial part of the adverse actions by upper-level management occurred, including reprimand, hostility, being written a poor performance review, and termination.

## PARTIES

5. The address of CSX is 500 Water Street, Jacksonville, Duval County, Florida 32202. CSX is an interstate freight railroad company subject to FRSA 49 U.S.C. §20109.

6. McCarty is a citizen and resident of Clay County, Florida.

## FACTS SUPPORTING CAUSE OF ACTION UNDER FRSA 49 U.S.C. §20109.

7. McCarty was employed by CSX as a System Production Teams Supervisor in July 2022.

8. McCarty worked as a System Production Teams Supervisor until January 26, 2024, when he sought medical leave for an exacerbation of Post Traumatic Stress Disorder resulting from adverse actions taken against him in retaliation for reporting safety concerns to CSX management, human resources and ethics departments.

9. Upon being released by his doctor to return to his management position Ronald Cato, Mr. McCarty's director, terminated him. This termination came shortly after CSXT received notice of Mr. McCarty's intent to file an FRSA claim or of actual filing of the claim.

10. McCarty engaged in activities protected under FRSA during his tenure as a System Production Teams Supervisor up to February 2024, by raising safety complaints to CSX. The complaints included mechanical problems with equipment,

track time issues, harassment by management, clarification on rules and regulations, unsafe work conditions, lack of manpower, supply shortages, work methods, and communication breakdowns affecting safety that McCarty made in good faith due to his belief that the issues created an unsafe work environment. CSX had actual and constructive knowledge of these complaints. These protected activities engaged in by McCarty ultimately resulted in adverse actions on the party of CSX in February of 2024 and again on July 2, 2024. The protected activities include, but are not limited to the following particulars in which McCarty raised and reported safety concerns with upper-level management:

   a. In approximately June of 2023, McCarty complained to Director Ronald Cato regarding the need for getting GPS on the work vans, because he was concerned about a particular employees using the van on non-company time and driving at erratic speeds.

   b. McCarty reported to Josh Brass in June of 2023 about a lack of support and communication from Director Ronald Cato regarding safety issues and the concern about his manner of addressing safety concerns that were raised to him as being an unsafe intimidation tactic.

   c. In approximately October 2023, McCarty raised a safety concern with Mr. Cato while working in Pensacola, Florida relating to Dennis Rhodes, a management employee, who showed up to the job very disheveled and smelling of alcohol.

    d. In October and/or November of 2023, McCarty was working in Bainbridge, Georgia under Bobby Nichols territory. McCarty reported concerns about Mr. Nichols to CSX Director Ronald Cato regarding Mr. Nichols appearing to be mentally unfocused, distracted, and unengaged with his management duties.

    e. During this same timeframe, McCarty called Mr. Cato while working in Nashville, TN about an employee who seemed to have issues recently with stumbling and falling on the ballast and was a safety concern for himself and others.

    f. Several times throughout end of 2023 and February of 2024, McCarty's team was having mechanical and electrical problems with the tamper rebuild shipped to the crew from a company named Plasser. It was a safety concern that McCarty feared would cause a collision, or an electrical injury for the operator. McCarty called Mr. Cato to seek help getting CSX mechanical employees, and Plasser engineers out there to troubleshoot the problems with the tamper.

    g. Throughout the time frame of June of 2023 to February of 2024, McCarty raised concerns to Mr. Cato relating to repeated delays and cutbacks on safety supplies causing low on an almost monthly basis, the safety concerns were either ignored or met with reprimand and hostility.

    h. Throughout the time frame of June of 2023 to February of 2024, McCarty several times raised concerns to Ronald Cato regarding how machine operators were

rushed out of the "hole" to begin work without giving them the proper amount of time to inspect their machines for the start of the day.

    i.  McCarty followed the accepted practice of using a rental car to drive back to Georgia to avoid hazardous conditions related to the onset of PTSD and accommodate his getting back to work in Georgia safely.

    j.  Throughout the relevant time period, McCarty reported unsafe communication failures on the part of Director Ronald Cato and numerous counts of harassment from upper-level management and co-workers created an unsafe work environment. CSX knew of these complaints.

    k.  In February of 2024, McCarty reported directly to CSX President and CEO Joe Hinrichs, about the harassment, intimidation, and retaliation practices of management for his department.

    10.  As a result of McCarty's safety complaints, he was subjected to further harassment by CSX supervisors and management, reprimanded, harassed, given a poor performance review, intimidated, threatened, lost his pay raise, and was denied a bonus to which he would have otherwise been entitled.

    11.  On or about January 22, 2024, as a result of McCarty's pattern of safety complaints as set forth above, McCarty learned that he was given a poor performance review which ultimately affected his compensation. Mr. McCarty disputed the poor performance review internally to CSX.

12. During the relevant period, performance criteria for Mr. McCarty were favorable. McCarty and his team had zero safety violations, collisions, EEO complaints, or union complaints. Mr. McCarty met production and budgetary goals. McCarty's team matched the other teams in the CSX system for performance. However, other production supervisors in roles similar to Mr. McCarty were given bonuses and raises despite negative marks on their performance history, with the only difference being that Mr. McCarty raised safety issues to upper-level management.

13. Director Ronald Cato knew of the reports made by McCarty.

14. Director Ronald Cato had previously warned McCarty not to raise safety issues to CSX Human Resources or elsewhere in the company.

15. CSX through its management employees, misrepresented facts in order to discipline McCarty, accuse him of wrongdoing, and create a pretextual excuse to unlawfully retaliate against McCarty for protected activities under FRSA.

16. For the applicable time for which McCarty received a negative performance review, McCarty had a strong record of safety, production, and the other metrics by which his performance would have been measured. McCarty's performance review should have been favorable based on the criteria for evaluation and comparison to his peers within CSX management.

17. The reasons given for the adverse employment actions toward McCarty by CSX are demonstrably false and pretextual excuses for its own violation of the Federal Railroad Safety Act, 49 U.S.C. § 20109, *et seq.*

18. Prior to his filing of an FRSA complaint with the Department of Labor, Mr. McCarty notified CSX that he would pursue an FRSA claim for retaliation related to his poor performance review.

19. On or about July 12, 2024, twelve days after filing his FRSA complaint with OSHA, CSX terminated Mr. McCarty from his management position.

20. Plaintiff performed his job satisfactorily during his employment with CSX.

21. McCarty and other employees have been subject to systemic and repeated intimidation tactics to prevent them from reporting safety concerns by management.

22. As a result of being retaliated against by CSX, McCarty has experienced lost wages and earning capacity due to being given a false poor performance review that disqualified him from a raise and bonus compensation, as well as, mental anguish that he suffered which resulted in lost work.

23. CSX's acts are discriminatory and retaliatory and due, in whole or in part, to McCarty lawfully reporting unsafe work conditions in good faith and filing an FRSA complaint.

24. Plaintiff brings his action pursuant to 49 U.S.C. § 20109 which states as follows:

(a) A railroad Carrier engaged in interstate or foreign commerce, a contractor or a subcontractor of such railroad carrier, or an officer or employee of such railroad carrier, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done –

(1) To provide information, directly cause information to be provided, or otherwise directly assist in any investigation regarding any conduct which the employee reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to railroad safety or security, or gross fraud, waste, or abuse of Federal grants or other public funds intended to be used for railroad safety or security, if the information or assistance is provided to or an investigation stemming from the provided information is conducted by –

  (C) a person with supervisory authority over the employee or such other person who has the authority to investigate, discover or terminate the misconduct.

  (2) to file a complaint, or directly cause to be brought a proceeding related to the enforcement of this part or, as applicable to railroad safety or security, chapter 51 or 57 of this title, or to testify in that proceeding;

 (b) Hazardous safety or security conditions.—

  (1) A railroad carrier engaged in interstate or foreign commerce, or an officer or employee of such a railroad carrier, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for –

  (A) reporting, in good faith, a hazardous safety or security condition.

25. CSX's conduct with respect to Scott McCarty is continuing, malicious and outrageous.

26. CSX's conduct will deter employees from reporting hazardous safety conditions.

27. That the intimidation, negative performance review, harassment, and threatening and termination of McCarty was done by CSX as retaliation for his reporting, in good faith, hazardous safety or security conditions and filing an FRSA

complaint or CSX's belief that he was about to file an FRSA complaint and ADA complaint.

28. That CSX should be subjected to punitive damages under §20109 to deter them from continuing to engage in the practice of retaliating those who report workplace safety conditions and concerns.

29. Upon receiving notice of Mr. McCarty's FRSA complaint, CSX terminated Scott McCarty on July 2, 2024, from his management position at CSX, thereby directly retaliating against him for filing his complaint with the Department of Labor. Mr. McCarty was still on medical leave relating to mental anguish issues that were triggered by the adverse actions taken by CSX which were the subject of his original FRSA complaint. As such, CSX has violated 49 U.S.C. §20109(a)(3) in which a railroad carrier:

> "may not discharge, demote, suspend, reprimand or in any other way discriminate and employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done—
> ***
> (3) to file a complaint, or directly cause to be brought a proceeding related to the enforcement of this part or, as applicable to railroad safety or security, chapter 51 or 57 of this title, or to testify in that proceeding"

31.  McCarty requests the following remedies for CSX's violations:

a) lost pay increase and bonus compensation;

b) the value of lost compensation and bonuses resulting from his negative performance review;

c) the value of lost fringe benefits with interest;

d) compensatory damages in an amount of no less than $1,000,000.00;

e) compensatory damages for emotional distress of no less than $1,000,000.00;

f) punitive damages for Defendant's conduct in this matter of no less than $250,000.00

g) litigation costs;

h) expert witness fees;

i) reasonable attorney fees; and

j) reinstatement to his management position.

WHEREFORE, Scott McCarty requests that CSX respond and fully reimburse him for all compensatory losses suffered because of CSX's conduct in retaliating and discriminating against McCarty, reinstate him in a supervisor position, and be assessed reasonable attorney's fees, litigation costs and punitive damages; and for all other relief deemed just and proper.

## **JURY DEMAND**

Plaintiff, Scott McCarty, demands a trial by jury on all issues so triable.

Respectfully submitted,

WILKES & MEE, PLLC

/s/ Alisa D. Wilkes
Alisa D. Wilkes
GA Bar No. 579280
13400 Sutton Park Dr. S. Suite 1204
Jacksonville, FL 32224
(904) 620-9545
Email: alisa@wilkesmee.com